Our next case is Bryant v. American Federation of Musicians. Ann Bryant appearing pro se to appeal to the District Court's decision to dismiss my petition complaint against both defendants with prejudice. The primary goal of my petition is to acquire copies of my union agreements. In the instant action, I have not demanded that the unions enforce those agreements, and my understanding is that the unions had copies of these agreements in 2007 and 2010, as discussed in my complaint, paragraphs 13 through 18. The issue giving rise to the petition is that I have not been adequately compensated or not compensated at all on union agreements for my work as an arranger, orchestrator, conductor, and contractor, provided at four to six times AFM scale and at single scale as a SAG performer on my audio masters. Others have been compensated in my place for my work. The purpose of my complaint is to be made whole for wage theft, theft of my pension contributions that has caused ongoing theft of a majority of the monthly pension benefits actually earned by me from my work as a New York member of both unions for more than 40 years. The New York recording agreements I seek pursuant to 3102C are work records in connection with professional artistic services rendered in New York. Substantively, I argue that the New York agreements I seek are property, and New York substantive law pursuant to 3102C is appropriately invoked for pre-suit discovery. Procedurally, I invoke Federal Rule 27 in order to command, preserve, and protect those agreements that were required to be filed at four different departments of each union. Pursuant to union bylaws and as stated on individual agreements themselves, the union's collective bargaining agreement terms are assumed in each recording agreement. Without those terms assumed, those agreements would have no force and effect. It would merely be lists of names and numbers without obligations. My position is that the union agreements are New York contracts and they are collective bargaining agreements. Either way, I assert my right to review them. In reliance upon the LMRDA's Employee Bill of Rights, Section 501, I filed the action by right. With respect to Section 501, this Court wrote in Girton v. Adams, Arams, 1964, a simple reading of that section shows that it applies to fiduciary responsibility with respect to money or property of the union. So my alternative claim of breach of fiduciary duty has merit if the unions have indeed lost my agreements or refused to produce them, about 2,000 of them. Please consider that it is the duty of the unions pursuant to 501A to hold its money and property solely for the benefit of the organization and its members. If this duty is violated, pursuant to 501B, and the labor organization fails or refuses to sue or recover damages or secure an accounting after being requested to by any member of a labor organization, such member may sue in a district court, as I have done here, in order to acquire and secure the information needed to be made whole for my wages and pension benefits. Importantly, I would not be the only beneficiary in this, because the unions enjoy a monopoly exemption in the Clayton Act in order to organize, to represent, and to advocate for their members. My stated purposes are consistent with the union's mission, because when thieves and sham imposters are exposed, the unions benefit. The integrity of the unions is upheld and reinforced, and the union pension funds that are often in critical status will be unburdened by those fraudsters. May it please the Court, I quote from 29 U.S.C. 411, Section 101.4. No labor organization shall limit the right of any member thereof to institute an action in any court or in a proceeding before an administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding. But my unions are fighting me here. My unions should be fighting for me. My pension has been stolen. This isn't evil. And if the unions will not produce my agreements, my pensions cannot be reconciled, and I cannot be fully accounted for my lost wages. And intellectual property funds that account now to musicians and singers for global uses of the masters I created will never be accounted to me. That is a consummate evil. I never voluntarily agreed to work for free, and the 13th Amendment of the U.S. Constitution guarantees I never shall have to. Thank you. Thank you very much. We're going to hear now from you. May I have rebuttal? You've saved some time, so we'll give you some time in rebuttal. Yes. Oh, thank you very much. Good morning, Your Honors. My name is Joseph Vitale from the law firm of Conway & Simon, LLP. I'm appearing today on behalf of the Screen Actors Guild, American Federation of Television and Radio Artists, one of the defendants of Pele's in this case. The claim that Ms. Bryan brought against, and the shorthand is SAG-AFTRA, is identical to the claim that was also brought against the Musicians Union, the American Federation of Musicians. It's counsels in the room, but I have won the coin toss, and I've gotten all ten minutes. I hope not to take that much time, but the arguments I make are not only on behalf of my client, but hopefully we're down to the benefit, not to the detriment. Are you able to speak to the issue of whether the union has her contracts? Well, we are here statutorily. I'm sorry, in terms of a matter of procedure, the allegation in the complaint is the union does not have my contracts. I was told in the summer of 2013 there are. But to the extent we could get this matter resolved. I mean, do you all have any of her contracts, and are you willing to supply them to her? Whether or not she states a Rule 27 claim is a very different question, and she's got a tough burden on that. But I'm just looking to see whether this could be resolved. I appreciate that, Your Honor. My information is no different than the allegations of the complaint. She's looking for over 2,000 recording contracts spreading a period of 20 to 30 to 40 years. The union simply does not have those contracts. Any of them? That is correct. And that's a representation that you're making after having searched for them? Well, I did not conduct a search. I can only say that my client reports that they do not have the contract. I can report that independent of this object. Do you maintain the contracts of your members? Well, just so we're clear, because there's a little bit of slippiness here, there is a difference between a personal recording contract and a collective barring agreement. And there's also, with all due respect, Ms. Bryant in her reply brief talks about an elephant in the room, and I think we have to talk about which room we're in, right? And I'm sure no one here is happy if Ms. Bryant has been robbed of a pension. Her complaint suggests that a business partner falsely reported his wife as performing the services and getting the benefits. But I'm here on behalf of the union. This isn't a pension claim because the pension claims, you go against the employer that didn't pay. The question is have you done everything that you can to see whether these contracts exist anywhere? Yes. Hold on a second. I remember an e-mail or something saying, we don't have your contracts. Maybe they're with the international. And so have you at least tried to find them in all the possible sources, both unions? Well, I can only speak with respect to SAG-AFTRA and your Honor. I think what you're referring to was an e-mail that was to local 802 regarding the international, the AFM. No, my point simply is. My point is. My point simply is have you tried to explore all the different possibilities where these contracts might exist? And if you have them, then just give them to her. I take no pleasure in litigating cases that don't need to be litigated. I take no pleasure in any employee not getting everything they're entitled to. And having said that, and the question is I am representing, I can only represent what my client told me. They do not have the contracts. Is it the normal practice of the union to maintain its members' contracts? I ask this question out of ignorance. I don't know if that's what you normally do for your members. There is, as Ms. Bryant alleges, there is a practice of when individual members enter into individual performance contracts, copies of those individual performance contracts, which are going to say this performer is going to get four times union scale, are sent to the union. Okay. Yes. So as I understand Ms. Bryant, she's skeptical of the fact that there should be thousands of contracts for her, and you don't have any of them. I mean, you know, if we were talking about two contracts and you had a fire and they got lost, I understand that, but we're talking about thousands of contracts, and you're representing that there are none for her? I mean, what happened? Given the procedural status of the case, we have not explored what happened to the contracts. I can only say that. Well, I mean, I've asked my client, do you have the contracts? They say no. I said, if you looked everywhere, they say we've looked everywhere. It's a bigger problem than just Ms. Bryant about the missing contracts. It's not as if we have every single performance contract except the ones that Ms. Bryant is looking for. It is a problem. And the problem is, given that it's a problem, given it's a problem that was identified more than six months before she filed her lawsuit, arguably a year before she filed her lawsuit, whether she can misuse under the guise of I want justice, because that's her complaint about what the court did with Rule 27, that it just doesn't ‑‑ I don't have an argument on Rule 27, but I was just asking whether we could move this along otherwise. Right. And in addition to the Rule 27, there's no case law supporting her argument that the CPLR applies. Rule 27, the court properly found that under Rule 27, she wasn't entitled to relief. And the other half of her claim ‑‑ Is there any legal proceeding other than this one that is ‑‑ that has as part of its aim the discovery of what happened to these contracts? I don't know what other litigation Ms. Bryant has. I mean, any litigation. I mean, is this an issue in some ‑‑ Oh, I'm sorry. Is the issue of missing records of ‑‑ Yes. Is this in some other? The answer is no. There's no other pending litigation concerning missing records. There had been litigation in which, as I understand it, this might have come up and been sought, not as a Rule 27 motion, but as part of regular discovery. I thought that was part of your argument for why Rule 27 relief shouldn't be granted. My ‑‑ if I misspoke, if Ms. Bryant has ‑‑ Because she filed other actions relating to royalty payments. No, no.  I thought that was the argument. I think I misunderstood the question. I thought the question was, is there other action involving the union with respect to the missing records? And the answer is no. I understand that there may be ‑‑ I want to know if there's a question of missing records, right? All I want to know is, simply, is there any legal proceeding anywhere by ‑‑ that you know of anywhere by anybody against anybody which has that issue, where the heck are these records? The answer is no. I'm not aware of it. The only litigation that I conceivably would think have that issue is Ms. Bryant's other litigation against her business partner. I don't know of anything that's looking ‑‑ Correct. Anybody who's looking for them because of pending litigation. Correct, Your Honor. I also just want to say that this is not only is the second half of her claim is, well, if you're not going to give me the records because it's astounding that you've lost 2,000 records, well, then each union should give me a million dollars because I've been harmed. Again, that claim is going to be governed by the duty of fair representation. The duty of fair representation has a very narrow statute of limitations of only six months. By her own admission, she knew about the missing records and the union's inability to provide these records for more than six months. She then tries to argue, well, I want to get around the six‑month statute of limitations because it's a continuing violation. But the case law is clear that if you ask the union to do something and the union says no, you can't revive a still DFR claim by continuing to ask over and over and over. The final effort Ms. Bryant brings is to try to recast her entire complaint as an LMRDA claim under the Labor Management Reporting Disclosure Act, or as she indicated, the Landrum-Griffin Bill of Rights. Putting aside the issue that that wasn't in her complaint, the two statutory provisions she relies upon are inapplicable. There's a provision 104 that talks about the union's obligation to provide members the collective bargaining agreement, and that's because unions, if they go out and negotiate a collective bargaining agreement on behalf of a member that's going to govern the terms and conditions, has an obligation to at least let the member know what those terms and conditions are. She's not looking for the collective bargaining agreement. She's looking for the personal service contracts that she signed and presumably she would have kept a copy of, but she's looking for the personal service contracts and there's no case law supporting the argument that 104 of the LMRDA requires the union to produce copies of personal service agreements. And then finally, with respect to the 501, the court, this court has indicated very clearly that the scope of 501 is a lot more narrow than other circuits have approached, that the fiduciary duty claim has to be respect, specifically with respect to property, to money, and the remedies under 501 are the return of the money and property that officers misused getting returned to the union. Ms. Bryant is not looking for the return. She's not bringing an action against any individual officers seeking to have them return to the union property that they took. She's looking to have the property given directly to her, and that's contrary  Thank you, Your Honor. Ms. Bryant, you can use the rest of your time for rebuttal. I didn't ask for 40 years of contracts. I asked for 10 years of contracts, essentially the 1980s, you know. My pension reports that I received for the first time in 2013 showed me that my address was changed and that I was not credited at all on three major years of my businesses, and that I was depleted in other years of my business, so I only paid single scale instead of six timescale. So that's the reason for calling for that. You mentioned that you're seeking this under a Civil Rule 27, and it's probably one of the hardest ways to get discovery is a pre-suit request for discovery. So I don't know if you want to respond to that concern, but I do want to just flag for you that even though we pressed counsel on being able to produce these for you, it may be difficult to say that you're entitled to them under Rule 27. Right. And for that reason, I did a great deal of reading on it. I mean, I'm a composer. I'm studying as hard as I can. But I was reading in Hogan v. Walmart, this court has written, we must apply New York substantive law to this diversity case. You also say that in matters of procedure, the federal law governs. Yes. But then you go on to say, to cite Gasparini v. Center for the Humanities, Inc., the Supreme Court in 1996 that decided federal courts sitting in diversity apply state procedural law. So that's on that basis I move forward on it. You see, the discovery rules are treated as procedural rules. And even pre-suit? Yes, ma'am. Even pre-suit. Oh, well, there's no way I can get a collective bargaining agreement. No, that's okay. I just wanted you to understand this. Yes, I appreciate that. Yes. And I can tell you that I can get a collective bargaining agreement any time. I believe they're online. But they will not tell me who got paid for arrangements and orchestrations that I did. Do you still have some of your royalty actions pending against other parties? Yes, they're not. It hasn't to do with my services as a musician and performer. It has to do with my service as a composer, which is another. I write songs. Oh, so these contracts are not relevant to that. No, not at all. And I want to say also that what's forgotten here, Mr. Vitale, with all due respect, is 200 pieces of music, about 100 contracts of popular television shows are the subset of agreements that I've asked for. Those shows are the Transformers, G.I. Joe, My Little Pony, Jem, shows that have been licensed since I wrote the music 35 years ago or 30 years ago. And they're global. And they went on for so many years, but I live in New York or I live in Florida. Are you looking for contracts relating to those songs? Absolutely. That's the subset I asked the Court to produce. No, but in that case, I don't want to give you legal advice, but you might be able to serve subpoenas in that case. But I'm not allowed to serve subpoenas because I'm only pro se. So I have to get the permission of the Court. I wrote to Judge Dollinger, then I wrote to Judge Pittman and said, could you please order this so we could at least get those television shows. Why don't you go into the pro se clerk's office and talk to them and get some advice from the pro se clerk's office in the Southern District of New York? Okay. They usually yell at me. They do. But anyway, these are very important. Tell them that the Second Circuit sent you. Okay, I will. Oh, good, I've got it in now. One last thing is that I don't understand why SAG and the FFM would have lost or tossed these 200 agreements that represent world-famous shows that are licensed constantly all over the world. They're worth a fortune and they're worth residuals. I have two singers back here who sang on these shows and they're not being paid. I mean, so nobody's being paid because the union, I ask them to help and they don't. I just want to say that we hear, it has nothing to do with the merits or the outcome, but we hear a lot of pro ses appear before us, and I just think you did a very elegant job. Oh, thank you. What a compliment. All right, we're going to take the case under advisement and we'll get you a decision as soon as we can. Thank you. You have to come to the microphone or we won't have a recording. Your Honors, I do not want to spend any more time on this. I know you have other cases. I represent Local 802 and I'm also of counsel to the AFM and I wanted to address very briefly the issue of the search for the records. We have a file room in our basement with boxes, boxes. It is overflowing with boxes filled with contracts, personal recording agreements and the such. I conducted a search for the records along with one of the secretaries and we found maybe about 50 or 60 of them which had been produced. The others are gone. These are paper files and boxes do occasionally get destroyed. There's only so much room. So we conducted a very thorough search for them. We could not find them. I'm not sure we caught your name on the recording and since you are kind enough to make a representation as to your personal search, I think that would be helpful. So could you state your name? Yes, Your Honor. Harvey S. Mars in the law office of Harvey S. Mars, New York, and I represent Local 802. I'm in-house counsel and I'm also of counsel to the American Federation of Musicians. Thank you for hearing me, Your Honors. All right. No, no, we're going to end now and hear the next case. But thank you to both sides.